## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**JANE DOE and JOHN DOE,** *as next friend* **JANE DOE II,** *a minor*

　　**Plaintiffs,**

**v.**

**FOUNDING FOURTEEN, INC,**
**ANNETTE HIGGINS,** *In Her Individual Capacity***, & STAN J. BEINER,** *In His Individual Capacity***,**

　　**Defendants.**

**CIVIL ACTION FILE**

**No. 1:23-CV-02666-SCJ**

## <u>ORDER</u>

This matter appears before the Court on Defendant Annette Higgins's Motion to Dismiss (Doc. No. [37]), Defendant Stan J. Beiner's Motion to Dismiss (Doc. No. [38]), Defendant Founding Fourteen, Inc.'s (henceforth "FAST") Motion to Dismiss (Doc. No. [39]), and former defendant Christopher Mahoney's

Motion to Dismiss (Doc. No. [40]).[1] For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants Higgins's, Beiner's, and FAST's motions to dismiss, and **DENIES** Defendant Mahoney's motion to dismiss given that he is no longer named as a Defendant in this action and has no claims asserted against him.

## I.    BACKGROUND

The Court derives the following facts from Plaintiffs' amended complaint. Doc. No. [31]. Plaintiffs are John and Jane Doe, parents of minor child Jane Doe II.[2] Id. ¶ 1. On behalf of Jane Doe II, Plaintiffs sue Founding Fourteen, Inc., the

---

[1] All citations are to the electronic docket unless otherwise noted, and all page numbers are those imprinted by the Court's docketing software.

[2] As the Court understands the Parties' designation in this case, Jane Doe and John Doe assert claims on behalf of their minor child, Jane Doe II. See Doc. No. [31], 1 (captioning the case plaintiffs as "JANE DOE AND JOHN DOE, as Next Friends of JANE DOE II, a Minor"). As Jane Doe II's parents, Jane Doe and John Doe can assert claims that belong to Jane Doe II (as the real party in interest) without joining her as a party. Fed. R. Civ. P. 17(a)(1), (c)(1); see also White v. United States, No. 22-13736, 2023 WL 3885816, at *1 (11th Cir. June 8, 2023), (parenthetically indicating "that [ ] Fed. R. Civ. P. 17(c) allows a parent to sue on behalf of their minor child . . . ." (citing Devine v. Indian River Cnty. Sch. Bd., 121 F.3d 576, 581 (11th Cir. 1997), overruled in part on other grounds by Winkelman ex rel. Winkelman v. Parma City Sch. Dist., 550 U.S. 516, 535 (2007))). As the Court understands this to be the posture of Jane and John Doe's claims in this action, it need not further consider Defendants' arguments about dismissing claims individually asserted by Jane Doe and John Doe (Doc. Nos. [37], 12; [38], 13; [39], 15). To be clear, the claims that continue in this case are for injuries suffered by Jane Doe II and asserted by her parents, Plaintiffs Jane Doe and John Doe, on her behalf.

owner and operator of FAST, a local charter school that Jane Doe II attended from 2017 through the fall semester of 2019. Id. ¶¶ 30, 40, 65, 103. Plaintiffs also bring claims against two former principals of FAST: Annette Higgins (principal from 2016 until the end of the 2018 school year) and Stan Beiner (principal in the 2019-2020 school year). Id. ¶¶ 5–6.

FAST is a local charter school in Fulton County. Id. ¶ 11. In 2017, while Defendant Higgins was principal, FAST hired Robert Allen Vandel to be a teacher. Id. ¶ 19. Vandel had a history of sexual harassment and abuse of students at his prior school. Id. ¶ 20. Vandel's past behaviors included "grooming and creating relationships of intimacy and trust with minor female students," making sexually suggestive comments and nicknames for students, inappropriate touching, suggesting and inviting contact with students outside of school, and isolating female students for prolonged periods of time. Id. ¶ 23. Vandel resigned from his prior school following criminal charges made against him for these behaviors. Id. ¶¶ 24–25. There also had been an investigation by the Georgia Professional Standards Commission and a State Administrative Hearing regarding Vandel's conduct. Id. ¶¶ 26–27. FAST and Defendant Higgins knew of Vandel's history given the background checks completed on all hired teachers.

3

Id. ¶¶ 21, 28. Despite these prior incidents, FAST and Higgins still decided to hire Vandel as a teacher. Id. ¶ 29.

Vandel continued "his pattern of grooming, sexual harassment, and sexual assault" as a teacher at FAST, taking particular interest in Jane Doe II. Id. ¶¶ 32–33. While Vandel began his grooming by giving Jane Doe II nicknames ("Blondie" and "Ballerina"), high-fiving her in the hallways, pulling her hair, and giving her extra attention (id. ¶ 34), this behavior escalated over the next two years to "rubbing her shoulders and pulling her hair from behind while she was in his classroom" (id. ¶ 45) and eventually "more overt sexual contact, including squeezing and caressing her shoulders, reaching down near her breasts, and letting his hand linger on her body" (id. ¶ 75). He isolated her and complimented her eyes, "smacked Jane Doe II on the buttocks in the front of the classroom," and "fondled her arm" in a painful manner while she was taking a test. Id. ¶¶ 76–78.

Jane Doe II's classmates noticed Vandel' treatment of Jane Doe II and bullied her for it. Id. ¶¶ 46, 79. This bullying was widely known at FAST by teachers and administrators. Id. ¶ 47. Eventually, John and Jane Doe (who were unaware of the sexual nature of Vandel's harassment) reported the bullying to FAST, who did not take any action to remedy the situation. Id. ¶¶ 80–81.

4

Between 2017 and 2019, a number of persons reported Vandel's inappropriate behaviors toward Jane Doe II and other female students and teachers. For instance, one teacher made specific reports of Vandel's sexual misconduct against other female students and teachers between 2017–2019, which included touching, standing too close, and making inappropriate comments. Id. ¶ 101. In the 2017–2018 school year specifically, Defendant Higgins and FAST's board members were made aware of Vandel's misconduct and ignored it. Id. ¶¶ 35–38. This lack of response enabled Vandel to continue his "pattern of abuse and grooming while teaching at FAST." Id. ¶ 39 (listing largely the same behaviors for which he had previously been arrested and investigated).

During the 2018–2019 school year, a teacher reported Vandel's behaviors (sexual harassment, inappropriate comments to students and teachers, and gift giving to female students) to the principal (at the time, Ashley Stinger), who ignored the report, made no effort to discipline Vandel, and even punished the teacher who made the report. Id. ¶¶ 48–51. This teacher then emailed FAST's board members to remind of Vandel's past behaviors and to inform of current, similar activities that were of concern. Id. ¶ 53 (informing that "teenage girls were remaining in Vandel's teaching area during recess and lunch with no other adult

present, that Vandel was continuing inappropriate conduct with young female students, and that other teachers had seen Vandel's inappropriate conduct with female students."). FAST did nothing to address the allegations made against Vandel and then punished the teacher for making the report, placing her on leave and docking her paycheck. Id. ¶¶ 54–56. The next principal of the school (Christopher Mahoney) also noted Vandel's behavior and made his concerns known to FAST's board, who again refused to do anything. Id. ¶¶ 59–62.

In the 2019-2020 school year, FAST had a new principal (Defendant Stan Beiner) who had been warned of Vandel's behaviors by a prior principal. Id. ¶ 66–67. The prior principal recommended that Vandel's classroom be moved to the main building for closer supervision given that Vandel "presented a threat to the safety of the students." Id. ¶¶ 68–71. Beiner took no action despite the concerns of Vandel isolating female students away from supervision. Id. ¶¶ 72–73.

Eventually, in late 2019, male students reported Vandel's behavior toward Jane Doe II to another FAST teacher. Id. ¶ 82. This teacher discussed the situation with Jane Doe II who indicated that Vandel had touched her in class, complimented her eyes, and "made her feel uncomfortable." Id. ¶ 83. Jane Doe II

6

also revealed that Vandel was personally messaging other female students outside of school hours. Id. ¶ 83. This teacher reported these concerns to Defendant Beiner and also included her own experiences of Vandel's sexually inappropriate comments and behaviors. Id. ¶¶ 84–85. Following these reports, Beiner and the vice principal met with Jane Doe II where they "immediately silenced" her, "chastised, blamed, and demeaned" her for wearing tight clothes, and "blame-shift[ed]" Vandel's conduct to Jane Doe II. Id. ¶¶ 86–90. No one from FAST ever contacted John Doe or Jane Doe to report the incidents involving Jane Doe II, nor did they report Vandel's sexual harassment to state agencies, despite being "mandatory reporters." Id. ¶¶ 93–94, 96–97. No actions were taken to remedy Jane Doe II's situation, and she was forced to continue going to class with Vandel as her teacher. Id. ¶¶ 98–99.

Given the circumstances, at the end of the 2019 fall semester Jane Doe II withdrew from FAST to attend another school. Id. ¶ 98. Following Jane Doe II's withdrawal, Vandel sexually assaulted and raped another female student at FAST. Id. ¶ 105. Vandel thereafter pleaded guilty to sexual molestation of Jane Doe II and to sexual assault, rape, and imprisonment of the other student. Id. ¶¶ 104–07. Because of these circumstances Jane Doe II has required extensive

counseling and continues to from significant mental and emotional consequences from her time as a student at FAST. Id. ¶¶ 109–112.

Plaintiffs initiated this lawsuit on June 14, 2023. Doc. No. [1]. They originally sued a number of persons associated with FAST during the relevant time period. Id. Following the filing of several motions to dismiss, however, Plaintiffs amended their complaint to assert more tailored claims against Defendants FAST, Higgins, and Beiner. Doc. No. [31]. The amended complaint is the operative complaint in this case. Defendants each filed a motion to dismiss the claims against them. Doc. Nos. [37]; [38]; [39]. Briefing has been completed on these motions and they are ripe for the Court's review.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Pleadings do not require any particular technical form and must be construed "so as to do justice." Fed. R. Civ. P. 8(d)(1), (e).

A defendant may move to dismiss a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court accepts the factual allegations made in

the complaint as true and construes them in the light most favorable to the plaintiff. Speaker v. U.S. Dep't. of Health & Human Servs. Ctrs. for Disease Control & Prevention, 623 F.3d 1371, 1379 (11th Cir. 2010).

As the purpose of Rule 8(a) is simply to provide notice to defendants of the nature of the claims and the grounds on which those claims rest, pleadings are generally given a liberal reading when addressing a motion to dismiss. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007). A complaint will be dismissed for failure to state a claim only if the facts as pled do not state a claim that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Twombly, 550 U.S. at 555–56.

To state a plausible claim, a plaintiff need only plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. Notice pleading does not require "the pleader allege a specific fact to cover every element or allege with precision each element of a claim" but does require a complaint "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Fin. Sec. Assur., Inc. v. Stephens, Inc., 500 F.3d 1276, 1282–83 (11th Cir. 2007) (quotations omitted). As long as the facts

9

alleged create a reasonable expectation that discovery will reveal evidence of the necessary elements, a plaintiff's suit should be allowed to continue. <u>Twombly</u>, 550 U.S. at 556; <u>Watts v. Fla. Int'l Univ.</u>, 495 F.3d 1289, 1295–96 (11th Cir. 2007).

## III.   ANALYSIS

With this background and the relevant legal standards in mind, the Court now turns to Defendants Higgins's, Beiner's, and FAST's motions to dismiss. Doc. Nos. [37]; [38]; [39]. It then will address former defendant Mahoney's motion to dismiss. Doc. No. [40].

### A.   <u>Defendant Higgins's Motion to Dismiss</u>

Defendant Annette Higgins was FAST's principal when it hired Vandel and oversaw him as a teacher during the 2017-2018 school year. She now moves to dismiss the amended complaint's claims against her, specifically Plaintiffs' Section 1983 Equal Protection Clause claim and state law claims of negligent hiring, supervision and retention, and attorneys' fees. Doc. No. [31] ¶¶ 134–143, 151–58, 165–66. Higgins primarily argues that she is entitled to dismissal of the Section 1983 claim because of the doctrine of qualified immunity and dismissal of the state law claims under official immunity. The Court ultimately agrees that immunity bars the state law claims, but disagrees that qualified immunity applies

10

to the Section 1983 claim at this time. Thus, the Court grants in part and denies in part Defendant Higgins's motion to dismiss.

### 1.    *Section 1983 Equal Protection Clause Claim*

The Court now addresses Plaintiffs' Equal Protection Clause claim against Defendant Higgins under Section 1983, first by outlining relevant legal standards and then considering the Section 1983 claim in the light of Plaintiffs' amended complaint.

### a)    Legal standards

A viable Section 1983 claim must allege that (1) there was a deprivation of a right secured by the Constitution or laws of the United States, (2) the deprivation occurred under color of state law, and, upon a defendant's assertion of qualified immunity, that (3) the right violated was clearly established at the time of the violation. Focus on the Fam. v. Pinellas Suncoast Transit Auth., 344 F.3d 1263, 1276–77 (11th Cir. 2003); Hill v. Cundiff, 797 F.3d 948, 979 (11th Cir. 2015). "'Section 1983 allows persons to sue individuals . . . acting under the color of state law for violations of federal law,' including the Equal Protection Clause of the Fourteenth Amendment, 'which confers a federal constitutional right to be free from sex discrimination.'" Doe by & through Doe v. Hoover City Bd. of

Educ., No. 2:19-CV-243-AMM, 2020 WL 5548804, at *13 (N.D. Ala. Sept. 16, 2020) (quoting Hill, 797 F.3d at 976).

As is relevant to Defendant Higgins's motion, liability under Section 1983 attaches when there is a "showing of deliberate indifference to known sexual harassment." Id. (quoting Hill, 797 F.3d at 978). To hold a defendant held liable, a plaintiff must allege that the defendant "actually knew of and acquiesced in the discriminatory conduct." Id. (quoting Hill, 797 F.3d at 978). Put differently, for a claim to be asserted against an employer for unlawful sexual harassment, "a plaintiff must plead that the defendant either [a] actually knew or [b] should have known about the alleged harassment and failed to take sufficient prompt remedial action." Palisano v. City of Clearwater, 219 F. Supp. 2d 1249, 1254 (M.D. Fla. 2002), aff'd, 62 F. App'x 320 (11th Cir. 2003).

"The standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous." Braddy v. Fla. Dep't of Lab. & Emp. Sec., 133 F.3d 797, 802 (11th Cir. 1998). A supervisor may be liable under Section 1983 for the actions of those he or she supervises if the supervisor "personally participated" in the violation or if there is a "causal connection between the action of the supervising official and the alleged

12

constitutional deprivation." <u>C.C. v. Monroe Cnty. Bd. of Educ</u>., No. CIVA 00-0753-CG-M, 2009 WL 4456356, at *6–7 (S.D. Ala. Nov. 25, 2009), <u>vacated sub nom. C.C. ex rel. Andrews v. Monroe Cnty. Bd. of Educ</u>., 427 F. App'x 781 (11th Cir. 2011) (quoting <u>Hartley v. Parnell</u>, 193 F.3d 1263, 1269 (11th Cir. 1999)). In a case where a supervisor did not participate directly in the violation the causal connection to establish supervisor liability requires "the harassment [be] sufficiently widespread so as to put [the supervisor] on notice of the need to act and [a failure] to do so." <u>Braddy</u>, 133 F.3d at 802. "A few isolated instances of harassment will not suffice," because "the 'deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant, and of continued duration.'" <u>Id</u>. (quoting <u>Brown v. Crawford</u>, 906 F.2d 667, 671 (11th Cir. 1990)).

        **b)**      **<u>Plaintiffs' Section 1983 claim alleged in the amended complaint</u>**

The Court now discusses the three requirements for a Section 1983 claim: (a) if Plaintiffs allege a viable constitutional violation under the Equal Protection Clause, (b) if Plaintiffs adequately allege the violation occurred under

13

color of state law, and (c) if Plaintiffs' allegations sufficiently allege supervisory liability and overcome the bar of qualified immunity as to Defendant Higgins.[3]

### (1)   Equal Protection Clause violation

Here, as far as a constitutional violation is concerned, the Court is satisfied that Plaintiffs sufficiently alleged that Vandel's sexual harassment of Jane Doe II states a violation of the Equal Protection Clause. Defendant Higgins argues that the disparate treatment alleged is conclusory and insufficient to state a constitutional violation. Doc. No. [37], 18–19. The Court disagrees both factually and legally. Not only do Plaintiffs allege disparate treatment between reports made by male or female students (Doc. No. [31], ¶¶ 134, 138, 140), but the Court notes that, even apart from disparate treatment, that "the Fourteenth Amendment's equal protection clause guarantees [students] the right to be free from sexual harassment by a teacher."[4] C.C., 2009 WL 4456356, at *6.

_____

[3] In resolving the instant motions to dismiss the Court considers the supervisor liability arguments in its qualified immunity analysis, as the Parties have briefed it. See, e.g., Doc. No. [37], 11.

[4] The district court's decision in C.C., 2009 WL 4456356, was vacated following the Supreme Court's intervening decision in Iqbal and remanded for consideration in the light of the new pleading standards. See C.C., 427 F. App'x 781 at 782. The Eleventh Circuit did not discuss the merits of the Section 1983 claims in their decision.

14

Put differently, "deliberate indifference to sexual harassment is an equal protection violation." Hoover City Bd. of Educ., 2020 WL 5548804, at *13 (quoting Hill, 797 F.3d at 979); cf. also id. ("Federal law does not require Doe to allege that she was sexually assaulted or harassed differently from other girls who also were sexually assaulted or harassed. *She must allege that she was sexually assaulted or harassed because she is a girl, which the court reasonably infers from Doe's allegations about the sexual nature of the assaults.*" (emphasis added)).

Plaintiffs' amended complaint clearly asserts that Jane Doe II, as a young female student, was sexually harassed by Vandel, an adult male teacher at her school, while Defendant Higgins was principal and supervised Vandel as a teacher. Doc. No. [31], ¶¶ 29–39. It moreover alleges that Higgins's (and other FAST administrators') reaction was specifically on account of Jane Doe II being a *female* student. Id. ¶ 133–34. Thus, the Court concludes that Plaintiffs' amended complaint adequately asserts a constitutional violation under the Fourteenth Amendment Equal Protection Clause.

### (2)   *Under color of state law*

The Court next concludes that Plaintiffs have adequately alleged Defendant Higgins's equal protection clause violation occurred under color of

15

state law. Defendant Higgins does not directly contest that, if there was a constitutional violation in this case, that it occurred under color of state law. See Doc. No. [37], 11–21 (omitting any "under color of state law" analysis in the analysis of the Section 1983 claim); cf. also id. at 8 ("Plaintiffs acknowledge that Ms. Higgins was a state actor and public employee. After all, Plaintiffs must allege that Ms. Higgins was acting under color of law to support their § 1983 claims against her[.]"). Nevertheless, to ensure the Court remains consistent with its analysis below on the state law claims and official immunity analysis, the Court briefly discusses the "under color of state law" requirement for a Section 1983 claim.

Generally, Section 1983's "under color of state law" requirement does not reach private conduct. Focus on the Fam., 344 F.3d at 1276–77. However, a private actor's action can still qualify as state action under a variety of tests, specifically "(1) the public function test; (2) the state compulsion test; and (3) the nexus/joint action test." Willis v. Univ. Health Servs., Inc., 993 F.2d 837, 840 (11th Cir. 1993).

> The public function test limits state action to instances where private actors are performing functions "traditionally the exclusive prerogative of the state." The state compulsion test limits state action to instances where the government "has coerced or at least significantly encouraged the action alleged to violate

> the Constitution." The nexus/joint action test applies
> where "the state has so far insinuated itself into a
> position of interdependence with the [private party]
> that it was a joint participant in the enterprise."

Id. (alteration in original) (internal citations omitted) (quoting Nat'l Broad. Co.

v. Commc'ns Workers of Am., AFL-CIO, 860 F.2d 1022, 1026–27 (11th Cir. 1988)).

When a plaintiff asserts a Section 1983 claim against a private party, the Court

must make a "case-by-case" determination of state action. Id.

As specified in greater detail below, the Court has determined that for

FAST to operate as a local charter school, the county and state boards of

education must approve the school's proposed charter. See O.C.G.A. § 20-2-2064.

This approval and FAST's functioning as a school system available to

Fulton County residents indicates the "perform[ance] [of] functions 'traditionally

[in] the exclude prerogative of the state.'" Willis, 993 F.2d at 840 (quoting Nat'l

Broad. Co., 860 F.2d at 1026). Moreover, when assessing FAST's charter

specifically, the Court notes that FAST must adhere to certain regulations of

public schools. See generally Doc. No. [31], 36–63 (including as part of FAST's

charter document, which is attached to the amended complaint, several State

oversight provisions, including for "Performance-based Goals and Measurable

Objectives" and submission of an "Annual Report" to the Georgia Department

of Education). FAST's charter thereby indicates a "position of interdependence" between the governmental and non-governmental entity. <u>Willis</u>, 993 F.2d at 840 (quoting <u>Nat'l Broad. Co.</u>, 860 F.2d at 1026–27). For these reasons and the other relevant portions of the Court's analysis *infra*, the Court determines that the amended complaint adequately asserts state action for purposes of a Section 1983 claim.[5]

### (3)     *Qualified immunity and supervisor liability*

Now that the Court has determined Plaintiffs adequately alleged a constitutional violation, it must address Defendant Higgins's argument that she is entitled to qualified immunity (Doc. No. [37], 11–17). Qualified immunity bars Section 1983 liability for a defendant unless the defendant violated clearly established law at the time of the violation. <u>Hill</u>, 797 F.3d at 979. A right can be clearly established in a number of ways: (1) existence of comparable case law

─────────────────────

[5] This conclusion is also consistent with many out-of-circuit cases which have squarely addressed the question of whether actions taken by charter schools generally meet the state action requirement for Section 1983 cases. <u>See</u>, <u>e.g.</u>, <u>Peltier v. Charter Day Sch., Inc.</u>, 37 F.4th 104, 122 (4th Cir. 2022); <u>United States v. Minn. Transitions Charter Sch.</u>, 50 F. Supp. 3d 1106, 1119–20 (D. Minn. 2014) (collecting cases). The Court acknowledges that this conclusion has not been universally reached and that each case nevertheless requires an individualized analysis because charter schools are a function of state law. <u>Caviness v. Horizon Cmty. Learning Ctr., Inc.</u>, 590 F.3d 806 (9th Cir. 2010).

establishing the constitutional right; (2) "a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right," or (3) "conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." Id. (quoting Lewis v. City of W. Palm Beach, 561 F.3d 1288, 1291–92 (11th Cir. 2009)).

It is a "clearly established principle that deliberate indifference to sexual harassment is an equal protection violation." Id. Again, however, for a proper causal connection to be alleged for supervisor liability, the "deprivations that constitute widespread abuse . . . must be obvious, flagrant, rampant, and of continued duration." Braddy, 133 F.3d at 802 (quoting Brown, 906 F.2d at 671). Without adequate notification of the abuse, a supervisor's response cannot be "constitutionally inadequate for purposes of qualified immunity." Id.

To the extent that Plaintiffs assert a Section 1983 claim based on Defendant Higgins's decision to hire Vandel as a teacher, Plaintiffs "must show that the hiring decision reflects deliberate indifference to a known and obvious risk that 'a violation of a particular constitutional or statutory right will follow the decision.'" Wilcox v. Andalusia City Sch. Bd. of Educ., No. 2:19-CV-650-RAH, 2023 WL 2412775, at *11 (M.D. Ala. Mar. 8, 2023) (quoting Griffin v. City of

Opa-Locka, 261 F.3d 1295, 1313 (11th Cir. 2001)). Mere negligence is insufficient — the sexual misconduct must be a "plainly obvious consequence of the hiring decision." Id. (quoting Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 415 (1997)).

Here, Plaintiffs allege that Defendant Higgins knew of Vandel's "well-established and documented work history of sexual harassment and abuse of middle school students." Doc. No. [31] ¶ 20. Plaintiffs contend that Defendant Higgins knew of Vandel's past because of the background checks and other records that would have been reviewed in the hiring process (and had "no reason whatsoever to believe that Vandel had been falsely accused"). Id. ¶¶ 21. 28. These prior reports would have included information about Vandel "grooming . . . minor female students," "giving certain students flirtatious, sexually suggestive, and inappropriate nicknames," "touching minor female students inappropriately and sexually," among other sexually abusive and inappropriate behaviors. Id. ¶ 23. Defendant Higgins is also alleged to have known about Vandel's prior arrest for sexual and simple battery and a State investigation into his conduct. Id. ¶¶ 24, 26–27. Plaintiffs moreover assert that Defendant Higgins, as principal of FAST at the time of Vandel's hiring, had "final

decision making authority" over the decision to hire, discipline, or fire FAST's teachers, including Vandel. Id. ¶ 22. Despite Vandel's concerning past, Defendant Higgins still hired him to work at FAST starting in the 2017-2018 school year. Id. ¶ 29.

Regardless of whether the aforementioned allegations are sufficient to show deliberate indifference in *hiring* Vandel, Defendant Higgins had continued awareness of Vandel's sexually inappropriate behavior during the 2017-2018 school year while she was still principal of FAST. Plaintiffs allege that Defendant Higgins "received multiple additional reports of this behavior from other teachers who observed Vandel's harassing conduct," as well as continued his "pattern" of sexually inappropriate behaviors while at FAST, and yet ignored them. Id. ¶¶ 35–36, 39. Plaintiffs emphasize that Defendant Higgins disregarded these reports knowing that Vandel had an "extensive history of sexual misconduct with young female students." Id. ¶ 38.

Thus, based on these allegations, Defendant Higgins, as the final decisionmaker on hiring, discipline, and termination of FAST's teaching staff, was deliberately indifferent to "obvious, flagrant, rampant, and continued" abuse of female students, including Jane Doe II. Wilcox, 2023 WL 2412775, at *11

21

(quoting Bryan Cnty., 520 U.S. at 415); Braddy, 133 F.3d at 802; cf. also Valdes v. Crosby, 450 F.3d 1231, 1244 (11th Cir. 2006) (determining it sufficient that the abuse alleged occurred with "sufficient regularly as to demonstrate a history of widespread abuse" for a violation). Thus, the Court concludes that Plaintiffs have pleaded a Section 1983 claim against Defendant Higgins for an Equal Protection Clause violation and the Court denies Defendant Higgins's motion to dismiss on this claim.

### 2.   *State Law Claims*

Turning to Plaintiffs' substantive Georgia state law claims against Defendant Higgins (i.e., negligent hiring, supervision, and retention), the issue raised in Defendant Higgins's motion to dismiss is whether official immunity precludes the claims asserted. Doc. No. [37], 5–9. The Court concludes that official immunity applies, and Defendant Higgins's motion is due to be granted.

Plaintiffs sue Defendant Higgins in her individual capacity. Doc. No. [31], ¶ 5. Under Georgia law, a public official cannot be liable in their individual capacity "for ministerial acts negligently performed[.]" Ware v. Jackson, 357 Ga. App. 470, 473, 848 S.E.2d 725, 729 (2020) (quoting McDowell v. Smith, 285 Ga. 592, 593, 678 S.E.2d 922, 924 (2009)). By contrast, in order for an official to be

22

personally liable for discretionary acts taken, there must be "malice or an intent to injure." Id. (quoting McDowell, 285 Ga. at 593, 678 S.E.2d at 924). "A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty." Id. (quoting Hicks v. McGee, 289 Ga. 573, 575, 713 S.E.2d 841, 844 (2011)). A discretionary act conversely "calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." Id. (quoting Hicks, 289 Ga. at 575–76, 713 S.E.2d at 844).

Here, there is little doubt and no argument that Defendant Higgins's decision to hire and retain Vandel as a teacher was a discretionary act. See, e.g., Dees v. Ga. Agric. Exposition Auth., No. 5:22-CV-266 (MTT), 2022 WL 17070531, at *5 (M.D. Ga. Nov. 17, 2022) ("[Plaintiffs'] allegations of negligent hiring and supervision are clearly within the realm of [ ] 'discretionary functions.'"). However, there is extensive discussion about whether the official immunity framework applies in this case at all given that Defendant Higgins was a president of a *local charter school*. See Doc. No. [43], 18 (responding to the motion to dismiss that "FAST is a private organization and is not a state or local public

entity" and so Defendant Higgins is "not entitled to the protection of the doctrine of official immunity.").

Preliminarily, the Court makes clear that the question of sovereign immunity and an individual's official immunity are distinct inquiries, both theoretically and as a matter of law. Shekhawat v. Jones, 293 Ga. 468, 470, 746 S.E.2d 89, 91 (2013) ("[S]overeign immunity protects from tort liability the State itself, including its agencies and instrumentalities, [while] official immunity protects state employees from being sued in their personal capacities."). While the question presented by Defendant Higgins's motion to dismiss is not about sovereign immunity,[6] the Court would be remiss to not consider the considerable overlap of prior decisions' analyses on these questions, specifically in a charter school context. For example, in the case extensively cited by Defendant Higgins, Campbell v. Cirrus Education, Inc., 355 Ga. App. 637, 845 S.E.2d 384 (2020), the Georgia Court of Appeals first held that the charter school at issue was "an instrumentality of the state" for sovereign immunity purposes and then applied this conclusion to determine that the school's superintendent/chief executive

---

[6] Though such inquiry is required for Defendant FAST's motion to dismiss on the state law claims asserted. See Section (III)(C)(1) infra.

officer was "a state officer or employee" for purposes of individual tort liability and official immunity. 355 Ga. App. at 646, 845 S.E.2d at 392. Thus, taking a cue from the Campbell framework, the Court first considers if FAST was an instrumentality of the state (for sovereign immunity) and then determines if Higgins, as FAST's former principal, would be a public official for official immunity purposes.

Starting with the precedent at issue: Campbell held that sovereign immunity applied to a state charter school and that official immunity protected the school's superintendent. 355 Ga. App. at 641 & 644–45, 845 S.E.2d at 389 & 391. As the Parties acknowledge, however, Campbell does not fully resolve the instant question about FAST's sovereign immunity. FAST is a *local charter school* operating in Fulton County, whereas Campbell's charter school was a *state* charter school that operated state-wide. For purposes of applying Campbell, therefore, the Court must consider that the statutory provisions governing local and state charter schools are distinct, and that the geographic scope of the two charter schools varies.[7]

_____

[7] Another Georgia Court of Appeals' decision has drawn on geographic scope in a different context for distinguishing the Campbell decision. See Files v. Hous. Auth. of

These differences, however, do not persuade the Court to reach a different conclusion from <u>Campbell</u> on sovereign immunity and official immunity. As far as the geographic reach of the charter school, the Court first notes that *most* ordinary Georgia public schools have a limited reach and are still determined to be "arms of the state." <u>Williams by & through Williams v. Fulton Cnty. Sch. Dist.</u>, No. 1:14-CV-0296-AT, 2015 WL 13264434, at *11 (N.D. Ga. Jan. 9, 2015) ("School districts and their employees acting in their official capacity are treated as arms of the state for purposes of state sovereign immunity."). Thus, the mere fact that FAST's charter operates within the geographical range of Fulton County bears little consequence on the Court's finding, especially given that "[t]he locality of this geographic factor appears not, by itself, to be dispositive" on the immunity questions. <u>Files</u>, 368 Ga. App. at 463, 890 S.E.2d at 362.

More importantly, the Court finds the nomenclature of *state* versus *local* charter schools to be a bit misleading for the immunity analysis. While it may appear from the name alone that local charter schools operate as a matter of local

_____

<u>City of Douglas</u>, 368 Ga. App. 455, 459–60, 890 S.E.2d 356, 360 (2023) ("The Housing Authority, by contrast, given its local operation, functional purpose, and governance, does not as an entity, fulfill a purpose of serving citizens of the State—rather, its purpose is to serve the citizens of the City of Douglas, Coffee County, and nearby environs.").

governance (leaving state charter schools to be a matter of state authority), the relevant difference rather is who is involved in the approval of the school's charter. A local charter school's charter must first be approved by the local school board authorities and then is sent to the state board of education for approval. O.C.G.A. §§ 20-2-2064, 20-2-2064.1. By contrast, a state charter school bypasses the local board and goes straight to the state board of education. Id. § 20-2-2084. Put differently, local charter schools have three participants in the charter (the charter school, the local board, and the state board), whereas state charter schools only have two-parties (the charter school and the state board). Nevertheless, *both* local and state charter schools stand equal insofar as *both* undergo state board approval, and the state board operates as a continued party in the charter document.

As Plaintiffs indicate, Campbell's analysis concluding that a state charter school was an instrumentality of the state relied on a number of statutory characteristics of State charter schools (i.e., purpose and funding). Doc. No. [43], 19–20. Local charter schools share these characteristics through other provisions

27

in the Charter Schools Act of 1998.[8] Particularly, state and local charter schools serve the same express purpose: "to increase student achievement through academic and organizational innovation by encouraging local school systems to utilize the flexibility of a performance based contract called a charter." Campbell, 355 Ga. App. at 642, 845 S.E.2d at 390 (quoting Atlanta Indep. Sch. Sys. v. Atlanta Neighborhood Charter Sch., 293 Ga. 629, 630, 748 S.E.2d 884 (2013)) (discussing the Charter Schools Act broadly). Moreover, funding for local charter schools follows the same process as the local public school system, just as in Campbell state charter schools were noted to be "treated consistently with all other public schools in this state." 355 Ga. App. at 642, 845 S.E.2d at 390 (quoting O.C.G.A. § 20-2-2089(e)) (state charter schools); see also O.C.G.A. § 20-2-2068.1(c) (local charter schools).

Thus, when the Court "examine[s] (1) the legislation creating the entity, and (2) the public purposes for which it was created," Campbell, 355 Ga. App. at 642, 845 S.E.2d at 389–90, it finds Campbell's analysis of sovereign immunity

---

[8] The Charter Schools Act of 1998 applies to local charter schools, and notably was enacted by the General Assembly prior to the state charter schools' provisions, O.C.G.A. § 20-2-2080 *et seq.*

and official immunity to be persuasive and hence concludes that FAST, as a local charter school, is entitled to sovereign immunity. The Court rejects Plaintiffs' contention that Campbell should not apply to local charter schools merely because they underwent local board approval and have distinct (though substantively similar) statutory provisions governing them.

Consequently, the Court concludes, given the rationale in Campbell, that Defendant Higgins, as former principal (i.e., employee and public official) of FAST (a charter school), is entitled to official immunity. 355 Ga. App. at 644–45, 845 S.E.2d at 391–92 (affirming the application of official immunity to a charter school's superintendent).

Hence, because the decision to hire and retain Vandel as a teacher is a clear discretionary function, a heightened degree of intent is required to overcome official immunity. Dees, 2022 WL 17070531, at *5. Plaintiffs' only allegations relating to Defendant Higgins's mental state involve her knowledge of the risk in hiring and retaining Vandel. These allegations do not go so far as to allege Defendant Higgins hired and retained Vandel *with intent* for him to engage in sexual misconduct with students. Thereby, the state law claims against Defendant Higgins are barred by official immunity. The Court grants Defendant

Higgins's motion to dismiss insofar as it relates to the state law claims of negligent hiring, retention, and supervision and for attorneys' fees.[9]

### B.   Defendant Beiner's Motion to Dismiss

The Court now turns to Defendant Beiner's motion to dismiss Plaintiffs' claims against him. Doc. No. [38]. Beiner was principal of FAST during the 2019-2020 school year when Jane Doe II withdrew from the school and Vandel was arrested for raping another student. Doc. No. [31], ¶¶ 64, 98, 105–06. Plaintiffs assert the same state law claims against Beiner, in his individual capacity (id. ¶ 6) as they do against Higgins (negligent hiring, supervision, and retention), as well as Section 1983 claims for violations of Jane Doe II's equal protection and substantive due process rights.

Given that Beiner and Higgins held the same principal position at FAST (in different years), for the same reasons as the Court grants Defendant Higgins's motion to dismiss Plaintiffs' state law claims (i.e., official immunity under state

_____

[9] Without a substantive state law claim to underlie the attorneys' fees request, Plaintiffs' claim for attorneys' fees under O.C.G.A. § 13-6-11 must also be dismissed. See, e.g., Perkins v. Thrasher, 701 F. App'x 887, 891 (11th Cir. 2017) ("Georgia state law claims for . . . attorney's fees under O.C.G.A. § 13-6-11 [is] derivative of Georgia tort law claims and thus require an underlying claim." (citing inter alia United Cos. Lending Corp. v. Peacock, 267 Ga. 145, 475 S.E.2d 601, 602 (1996))).

law), the Court grants Beiner's motion to dismiss the state law claims of negligent hiring, supervision, and retention against him.[10] <u>See</u> Section (III)(A)(2) *supra*.

The Section 1983 claims against Beiner, however, require further assessment given the distinct factual nature of the constitutional violations alleged. As with Defendant Higgins, Plaintiffs contend that Beiner violated Jane Doe II's constitutional rights and is liable under Section 1983 on based on supervisor liability. The same standards governing supervisory liability discussed *supra* are applicable to the Court's instant analysis. <u>See</u> Sections (III)(A)(1)(a) & (b)(3) *supra*. Thus, Plaintiffs must adequately allege that either Beiner "personally participated" in the constitutional violation or that the violation's conduct was so "sufficiently widespread" that he was "on notice of the need to act" and failed to do so." <u>C.C.</u>, , 2009 WL 4456356, at *6–7 (first quote); <u>Braddy</u>, 133 F.3d at 802 (second and third quotes).

As far as the specific constitutional violations at issue, Plaintiffs assert Equal Protection Clause and Substantive Due Process Clause claims against Beiner for his conduct as principal of FAST. The Court addresses each in turn.

---

[10]   The Court likewise dismisses Plaintiffs' claims for attorneys' fees under O.C.G.A. § 13-6-11. <u>See</u> note 9 *supra*.

### 1.   *Section 1983: Equal Protection Clause Violation*

Like Defendant Higgins, for the Equal Protection Clause violation, Plaintiffs must assert that Beiner "actually knew or should have known about the alleged harassment and failed to take sufficient prompt remedial action." Palisano, 219 F. Supp. 2d at 1254. Defendant Beiner argues that the amended complaint's allegations are conclusory and fail to state there was adequate notice of the allegedly violative constitutional conduct at issue for supervisory liability or an Equal Protection Clause violation. Doc. No. [38], 15–22. As with Defendant Higgins, the Court disagrees and finds that Plaintiffs adequately alleged a Section 1983 claim for an equal protection violation against Defendant Beiner.

The Court concludes that Plaintiffs' allegations sufficiently meet the pleading standards to survive a motion to dismiss at this phase of the case. Jane Doe II alleges that she, as a female student, experienced sexual harassment at the hands of a teacher *because she was a female*. Doc. No. [31], ¶¶ 132–34. Such allegations are sufficient to assert an equal protect violation.[11] Hoover City Bd., 2020 WL 5548804, at *13 (quoting Hill, 797 F.3d at 979). Plaintiffs also assert that

---

[11] Moreover, Defendant Beiner took these actions under the color of state law. See Section (III)(A)(1)(b)(2) *supra*; see also Doc. No. [38], 8–9.

during the 2019-2020 school year, when Beiner was principal of FAST, he knew

of reports of inappropriate conduct by Vandel and that Vandel presented an

ongoing risk to female students. Doc. No. [31], ¶¶ 64, 66. Plaintiffs specify that

this knowledge was generally known in the school and that specifically the

outgoing principal had even warned Beiner to move Vandel's classroom to the

main building for closer supervision given his previously concerning behavior.

Id. ¶¶ 69–70. According to Plaintiffs' amended complaint, Beiner

"understood . . . Vandel presented a threat to the safety of young female

students" and "continued to do nothing in spite of this knowledge." Id. ¶¶ 72–73.

fact, while Beiner was principal, Jane Doe II was placed in Vandel's science class.

Id. ¶ 74. Beiner (as part of FAST's administration) ignored Jane Doe II's parents'

concerns about other students' bullying of Jane Doe II, which (unbeknownst to

them) was connected to Vandel's sexually inappropriate behavior toward their

daughter. Id. ¶¶ 80–81. Upon receiving a report from a FAST teacher regarding

claims of Vandel's inappropriate sexual conduct toward Jane Doe II (per reports

from other students), Beiner met with Jane Doe II and failed to treat the

allegations against Vandel seriously, but instead shifted the blame for the

incidents to Jane Doe II herself. Id. ¶¶ 82–91. Plaintiffs allege that these actions

33

allowed the harassment against Jane Doe II—based on her sex and gender—to continue. Doc. Id. ¶ 132. Moreover, Plaintiffs allege that Beiner treated the reports of misconduct against Jane Doe II as a female student differently from reports of misconduct against male students. Id. ¶¶ 134–135.

Thus, the amended complaint alleges that Beiner (1) knew of Vandel's propensity for misconduct prior to starting his tenure as principal, (2) continued to receive reports of Vandel's misconduct during the school year, and (3) still did not take any meaningful action to stop Vandel. These allegations are sufficient to assert a claim of deliberate indifference to sexual harassment for an equal protection violation and survive Beiner's motion to dismiss. Hill, 797 F.3d at 979.

### 2. *Section 1983: Substantive Due Process Clause Violation*

The same, however, cannot be said for Plaintiffs' substantive due process claim against Beiner. "[D]eliberate indifference is not, without more, a basis for finding substantive due process liability in cases arising in the school context." Id. at 980. Indeed, the Fourteenth Amendment is not a "font of tort law." Doe as Next Friend of M.W. v. DeKalb Cnty. Sch. Dist., No. 1:15-CV-03276-RWS, 2017 WL 11742751, at *6 (N.D. Ga. Feb. 21, 2017) (quoting Wadell v. Hendry Cnty. Sheriff's Office, 329 F.3d 1300, 1305 (11th Cir. 2003)). Substantive due process

violations thereby can only be found when the conduct alleged is "characterized as arbitrary, or conscience shocking, in a constitutional sense." Peterson v. Baker, 504 F.3d 1331, 1336 (11th Cir. 2007) (quoting Cnty. of Sacramento v. Lewis, 523 U.S. 833, 847 (1998)); see also King v. Pridmore, 961 F.3d 1135, 1143 (11th Cir. 2020) ("The right to substantive due process—the claimed right at issue in this case—protects individuals from arbitrary conduct by government officials that 'shocks the conscience.'"). "[E]ven intentional wrongs seldom violate the Due Process Clause." Peterson, 504 F.3d at 1336 (quoting Waddell, 329 F.3d at 1305).

Plaintiffs allegations of Beiner's knowledge of Vandel's misconduct prior to starting his position as principal and the continued reports of further allegations of misconduct received throughout the school year is insufficient to constitute behavior that "shocks the conscience" supportive of a substantive due process violation in this case.[12] While the Court in no way approves of Beiner's alleged conduct in the meeting he held with Jane Doe II or his general lackluster treatment of the claims of sexual harassment against FAST's female students and teachers, the Court cannot say that Beiner's conduct, as alleged, meets the "high

---

[12] The Court here is careful to distinguish Beiner's conduct (in ignoring the reports of sexual misconduct) from Vandel's conduct in actually harassing Jane Doe II.

35

bar" of substantive due process claims under Section 1983. <u>King</u>, 961 F.3d at 1143;

<u>see also</u> <u>625 Fusion, LLC v. City of Fort Lauderdale</u>, 526 F. Supp. 3d 1253, 1271

(S.D. Fla. 2021) ("[T]he Eleventh Circuit has time and again made clear that only

a very narrow range of governmental conduct will 'shock the conscience'—a list

that, for instance, doesn't even include a state-employed college professor's

violent and intentional battery against a student or a firefighter's sexual assault

of an apprentice."). Thus, the Court grants Defendant Beiner's motion to dismiss

as it pertains to the Section 1983 substantive due process claim alleged against

him.

### C.    **FAST's Motion to Dismiss**

Finally, Defendant FAST moves to dismiss the claims made against it. Doc.

No. [39]. Plaintiffs assert state law claims of negligent hiring, supervision, and

retention, as well as vicarious liability for Vandel's assault and battery of

Jane Doe II against FAST. Plaintiffs also assert federal law claims under Title IX

and Section 1983 for constitutional violations of the Equal Protection Clause and

the Due Process Clause. The Court addresses each of these claims.

1.    *State Law Claims*

Defendant FAST moves to dismiss the state law claims asserted against it under the doctrine of sovereign immunity. The Court has already determined that sovereign immunity applies to FAST as a local charter school and thus, in absence of any waiver, the state law claims made by Plaintiffs are barred. See Section (III)(A)(2) *supra*.

Plaintiffs, in response to FAST's motion to dismiss, argue that sovereign immunity has been waived under the Hidden Predators Act, O.C.G.A. § 9-3-33.1. Doc. No. [42], 14–17. This Georgia Code provision, however, primarily operates to extend the statute of limitations for suits involving "childhood sexual abuse." The provision itself delineates what actions constitute "childhood sexual abuse" for which the limitations period is extended. O.C.G.A § 9-3-33.1(a)(1).

Plaintiffs draw on the language in subsection (c)(2), which specifies that damages may be awarded against a "person [who] was a volunteer or employee of any entity that owed a duty or care to the plaintiff" if a preponderance of the evidence supports a finding of negligence by the entity. Id. § 9-3-33.1(c)(2). Plaintiffs argue that this provision permits a monetary judgment be obtained from a state entity, and thereby constitutes a waiver of sovereign immunity. Doc.

No. [42], 16. Plaintiffs contend "this legislative act creates a right of action against FAST for its negligence because it owed a duty of care to the young girls sexually abused by Vandel." Id. at 17.

The Court concludes that the Hidden Predators Act does not waive sovereign immunity for Plaintiffs claims here. The Hidden Predators Act does not provide an independent cause of action for a monetary judgment to be obtained. Instead, as indicated, subsection (a)(1) defines "childhood sexual abuse" referenced in subsection (c)(2) by referencing other Georgia statutory provisions with causes of action attached to them. Notably, Plaintiffs do not assert any of these claims against Defendant FAST.

Accordingly, Plaintiffs have not shown a basis for waiver of sovereign immunity. Hence the Court concludes that sovereign immunity bars Plaintiffs' state law claims against Defendant FAST (negligent hiring, supervision, and retention, vicarious liability for assault and battery, and attorneys' fees under O.C.G.A. § 13-6-11) and dismisses these claims.

### 2.   *Title IX Claim*

Plaintiffs also assert a Title IX claim against Defendant Fast for Vandel's sexual harassment of Jane Doe II. Doc. No. [31], ¶¶ 118–28. Title IX provides:

"[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance[.]"[13] 20 U.S.C. § 1681(a). Educational institutions who receive federal funds may be liable for damages for violations of Title IX. Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ., 526 U.S. 629, 640 (1999). For monetary liability, the educational institution must have been "deliberately indifferent to known acts of sexual harassment by a teacher." Id. at 641–42 (citing Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 287–288 (1998)). The Supreme Court derived this deliberate indifference requirement from Section 1983's municipal liability standards and also requires that the deliberate indifference to have "effectively 'cause[d]' the discrimination. Id. (alteration in original) (quoting Gebser, 524 U.S. at 291). Such is a "high standard" to meet. Id. at 643.

Title IX liability also requires the suit be alleged against an appropriate person—that is, "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's

---

[13] None of the specified exceptions to Title IX have been raised by the Parties in this case. See 20 U.S.C. § 1681(a)(1)–(9).

[institution's] behalf . . . ." <u>Gebser</u>, 524 U.S. at 290. The appropriate person must either (1) have "actual knowledge of the discrimination or harassment the plaintiff alleges occurred," <u>Williams v. Bd. of Regents of Univ. Sys. of Ga.</u>, 477 F.3d 1282, 1293 (11th Cir. 2007), or (2) in cases involving harassment by a teacher, be aware of a "substantial risk" that the teacher would engage in "severe, pervasive, and objectively offensive harassment" against students, <u>Hill</u>, 797 F.3d at 969. The appropriate person at the education institution must also be shown to have been "deliberate[ly] indifferen[t]," or to have made "an official decision . . . not to remedy the violation." <u>Id</u>. at 968 (alteration in original) (quoting <u>Gebser</u>, 524 U.S. at 290).

Here, Plaintiffs have alleged (and Defendant FAST has not contested) that FAST received federal funds to subject it to potential Title IX liability. Doc. No. [31], ¶ 119. Next, Plaintiffs have adequately alleged, for purposes of the instant motion to dismiss, that appropriate persons had knowledge of (or, at the least, knowledge of a substantial risk of) Vandel's continuing harassment of female students and teachers at FAST. Specifically, all principals during the time of the harassing behaviors alleged (i.e., Defendants Higgins and Biener, and former principals Mahoney and Stinger) knew of Vandel's conduct while he was

40

employed as a teacher at FAST, as well as the multiple reports made to FAST board members and administration between 2017 and 2019. Id. ¶¶ 35, 37, 48–49, 53, 60–61, 66–67, 84–85. The principals had "authority and ability to remedy the discrimination faced by Jane Doe II" through firing, disciplining, or moving Vandel. Id. ¶ 120; see also id. ¶ 16. Defendant Higgins and FAST administration also are alleged to have known of his prior similarly inappropriate conduct at his former school prior to the decision to hire him to teach at FAST. Id. ¶¶ 20–22.

Moreover, the Court determines that Plaintiffs' amended complaint adequately alleges deliberate indifference to the known (or substantial) risk Vandel presented. The Eleventh Circuit has indicated that deliberate indifference might be shown when the actor "knew of a need to . . . supervise in a particular area and [ ] made a deliberate choice not to take any action." Williams, 477 F.3d at 1295 (first alteration in original) (quoting Gold v. City of Miami, 151 F.3d 1346, 1350–51 (11th Cir. 1998)).

Here, Plaintiffs have alleged that multiple reports of Vandel's inappropriate behaviors were made to principals (who had authority to act by disciplining or further supervising Vandel (Doc. No. [31], ¶ 16)) and to FAST's board and administrators itself (id. ¶¶ 35, 37, 48–49, 53, 60–61, 66–67, 84–85).

41

However, not one person did anything constructive to address Vandel's behaviors. Id. ¶¶ 35–37, 50–51, 53–54, 62, 101. In fact, the teachers who reported the incidents were often disciplined for their reports. Id. ¶¶ 51, 54, 95–96, 101. Only Defendant Beiner directly addressed the harassment Jane Doe II suffered—but in doing so shifted the blame for the incident to Jane Doe II herself. Id. ¶¶ 88–90. These allegations are sufficient to support a finding of deliberate indifference to known harassment at this phase of the proceedings.[14]

Moreover, Plaintiffs sufficiently allege that, given FAST's failure to address Vandel's misconduct, the harassment continued to occur against Jane Doe II. Id. ¶¶ 39, 75–76, 82–83, 95. Thus, FAST's decision to ignore the reports of inappropriate harassing behavior "subjected [Jane Doe II] to further discrimination" at Vandel's hands. Williams, 477 F.3d at 1296.

Plaintiffs' allegations of continued harassment by Vandel against Jane Doe II—severe enough to result in being bullied by her peers and spurring concerns by teachers about her treatment (Doc. No. [31], ¶¶ 79–84)—are

---

[14] This finding of deliberate indifference is further reinforced by FAST's knowledge of Vandel's prior sexual misconduct at the time of his hiring, as alleged by Plaintiffs (Doc. No. [31], ¶¶ 20–22). See Williams, 477 F.3d at 1296 ("[E]ven with its knowledge of [the harasser's] past sexual misconduct, [defendants] failed to adequately supervise [the harasser.]").

sufficiently severe, pervasive and objectively offensive to adversely impact and deny her educational opportunity at FAST. See Williams, 477 F.3d at 1297 ("Whether gender-oriented conduct rises to the level of actionable harassment thus depends on a constellation of surrounding circumstances, expectation, and relationships, including, but not limited to, the ages of the harasser and the victim and the number of individuals involved." (internal quotation marks omitted) (quoting Davis, 526 U.S. at 651)). Indeed, Vandel's treatment of Jane Doe II and FAST's failure to address it led to her withdrawing from the school. Cf. id. at 1298.

Thus, the Court concludes that Plaintiffs' amended complaint states a claim under Title IX against Defendant Fast by adequately alleging: (1) the education institution (FAST) was a federal funding recipient, (2) an appropriate person knew of the ongoing harassment, (3) the reaction to the known harassment was deliberately indifferent, and (4) the harassment was sufficiently severe and pervasive to effectively bar Jane Doe II's educational opportunity. See id. at 1294–99. Defendant Fast's motion to dismiss this claim is denied.

### 3.    Section 1983 Claim

Defendant FAST also moves to dismiss Plaintiffs' Section 1983 claim alleging violations of Jane Doe II's Equal Protection Clause and Due Process Clause rights. "Title IX and § 1983 sexual harassment claims are similar[.]" Hill, 797 F.3d at 976. However, the resolution of one "does not dictate the result" of the other, and depending on a plaintiff's framing of the claims, resolution of the claims may be "seemingly inconsistent." Id.

Here, the avenue to Section 1983 liability for Defendant FAST differs from that of individual Defendants Higgins and Biener. As an arm of the municipality (i.e., the school district), FAST may only be liable for its own actions. Id. at 977 (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 479–80 (1986)). Thus, Plaintiffs must allege a FAST policy or custom that caused Jane Doe II's alleged constitutional torts. Id. Such policy or custom must show that FAST's actions were "taken with deliberate indifference to [ ] known or obvious consequences." Doe v. Sch. Bd. of Broward Cnty., 604 F.3d 1248, 1263 (11th Cir. 2010) (quoting Davis v. DeKalb Cnty. Sch. Dist., 233 F.3d 1367, 1375–76 (11th Cir. 2000)).

Plaintiffs assert a few avenues for municipal liability under Section 1983. First, Plaintiffs allege that FAST's final policymakers acted to establish a policy

44

or custom sufficient for Section 1983 liability. Doc. No. [31], ¶¶ 22 ("FAST vests *final decision making authority* as it relates to teacher hiring, discipline, and firing with its principal." (emphasis added)), 23 (alleging that "FAST and its administrators and final decision makers" knew of the reports against Vandel), 132 ("FAST's principals and governing board were final decision makers and policy makers regarding the employment of Vandel. FAST's principals and governing board were the final decision makers on policies [involving hiring, retention, discipline, investigation, reporting, and other actions.]"), 136 ("FAST's final policy makers each participated in the decision making concerning the discipline and investigation of Vandel during his time as a FAST employee.").

For Section 1983 cases involving municipal liability based on a final policymaker's decision, a plaintiff must allege "'the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered' and that the decisionmaker made 'a deliberate choice to follow a course of action' considering various alternatives with respect to the subject matter in question." Watkins v. Session, No. 22-14070, 2023 WL 8469704, at *4 (11th Cir. Dec. 7, 2023) (quoting Pembaur, 475 U.S. at 483). As a pleading matter, however, Plaintiffs need not assert the decisionmaker at issue actually held the final policymaking

authority, but only that a "policy, practice, or custom . . . caused the [constitutional violation]." <u>Christmas v. Nabors</u>, 76 F.4th 1320, 1329 (11th Cir. 2023) (quoting <u>Hoefling v. City of Miami</u>, 811 F.3d 1271, 1280 (11th Cir. 2016)); <u>see also</u> <u>id.</u> at 1329–30 ("Indeed, 'identifying and proving that a final policymaker acted on behalf of a municipality is an evidentiary standard, and not a pleading requirement.'" (internal quotation omitted) (quoting <u>Hoefling</u>, 811 F.3d at 1280)). Such final policymaking authority can provide a means for liability based on a "single action or decision" rather than an ongoing, continuing violation. <u>Broward Cnty.</u>, 604 F.3d at 1264.

Plaintiffs also allege a basis for municipal liability under an ordinary theory of the entity's own policy or custom. <u>See</u>, <u>e.g.</u>, Doc. No. [31], ¶¶ 137 ("As set forth above, FAST had an established custom and practice of ignoring complaints and warnings of violence and sexual harassment of its young female students."), 147 ("Minor Jane Doe II had a constitutional right to liberty and bodily security, which Defendants violated through the adoption of unofficial customs and policies.").

A policy involves an "officially adopted [decision]" whereas a custom is "a practice that is so settled and permanent that it takes on the force of law." <u>Keele</u>

46

v. Glynn Cnty., 938 F. Supp. 2d 1270, 1289 (S.D. Ga. 2013) (quoting Cooper v. Dillon, 403 F.3d 1208, 1221 (11th Cir. 2005)). Policies can be established by showing a custom or practice that permitted the violation and was the "moving force" behind the violation. Id. A custom must be "longstanding and widespread," consisting of more than "an isolated incident." Id. (quoting Craig v. Floyd Cnty., 643 F.3d 1306, 1310 (11th Cir. 2011)).

Here, Plaintiffs alleged Equal Protection Clause claim involves Jane Doe II being subjected to harassment by Vandel because she was a female. See, e.g., Doc. No. [31], ¶ 133. Like with Defendants' Higgins and Beiner, such allegations are sufficient at this phase to find that she has adequately alleged a constitutional violation under the Fourteenth Amendment's Equal Protection Clause. The question remaining is whether Plaintiffs adequately alleged a policy, custom, or a final decisionmaker's decision which caused the violation at issue.

The Court concludes that Plaintiffs have done so. Plaintiffs allege FAST's custom of ignoring reports of harassment Vandel, against both Jane Doe II herself and other female students and teachers. See, e.g., Doc. No. [31], ¶¶ 35–37, 50–51, 53–54, 62, 101. Plaintiffs also allege that FAST and its decision makers not only hired Vandel with his prior record of sexual harassment (id. ¶¶ 20–26), but after

47

he began teaching at FAST, its principals and board members continued to disregard claims of his similar harassment against females, including Jane Doe II. Compare id. ¶ 23 (prior reports of Vandel's behaviors) with id. ¶ 39 (Vandel's "continued [ ] pattern of abuse" while at FAST). As previously determined, the decision to ignore the reports of harassment constituted deliberate indifference and subjected Jane Doe II to further violations of her equal protection rights. See Sections (III)(A)(1) & (B)(1) supra. Thus, the Court finds that Plaintiffs have stated a claim for relief under Section 1983 for an Equal Protection Clause violation against FAST for its custom of disregarding reports of abuse by Vandel, which caused further violation of Jane Doe II's constitutional rights.

For Plaintiffs' Section 1983 claim based on a violation of Jane Doe II's substantive due process rights, however, the Court concludes that the conduct alleged does not rise to a level of that shocks the conscience, and thereby fails to state a substantive due process violation. Like the individual Defendant Beiner, a constitutional violation under the Fourteenth Amendment's Due Process Clause requires "conduct . . . properly be characterized as arbitrary, or conscious shocking, in a constitutional sense." DeKalb Cnty. Sch. Dist., 2017 WL 11742751, at *6 (quoting Peterson, 504 F.3d at 1336).

48

Here, the treatment Plaintiffs allege Jane Doe II suffered as a result of FAST's custom of ignoring reports of Vandel's misconduct is certainly unwelcome and concerning for any student. To be sure, it is not appropriate for any teacher to treat a student the way Vandel "groomed" Jane Doe II. However, FAST ignoring Vandel's inappropriate comments and occasional touching of Jane Doe II does not rise to the level of "conscience shocking" behavior for a substantive due process violation under Section 1983. Cf. Hill, 797 F.3d at 980 ("[D]eliberate indifference is not, without more, a basis for finding substantive due process liability[.]"). Accordingly, the Court grants Defendant FAST's motion to dismiss Plaintiffs' Section 1983 claim for a substantive due process constitutional violation.

### D.    Former Defendant Mahoney's Motion to Dismiss

Finally, the Court denies former defendant Mahoney's motion to dismiss. Doc. No. [40]. Mahoney was initially named as a defendant in Plaintiffs' case (Doc. No. [1]), but upon amending their complaint, Plaintiffs did not reassert any claims asserted against him (Doc. No. [31]). Mahoney acknowledges that there are no existing claims against him and that he has been terminated from the action. Doc. No. [40], 2. Out of an "abundance of caution," however, Mahoney

49

filed his motion to dismiss because of procedural concerns relating to the voluntary dismissal of actions under Rule 41. Id. The Court denies Mahoney's motion to dismiss given that he has been terminated from this action and there are no claims to dismiss against him. The Court confirms, however, that the docket in this case shows Mahoney has been terminated as a defendant as of September 12, 2023—the date Plaintiffs filed their amended complaint—and that no claims remain outstanding against him. Cf. May v. Am. Cast Iron Pipe Co., No. 2:12-CV-0285-SLB, 2014 WL 1043440, at *1 n.2 (N.D. Ala. Mar. 17, 2014) ("Plaintiff's failure to include [prior] claims in his amended [c]omplaint operates as a voluntary dismissal of these claims.").

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants Higgins's, Beiner's, and FAST's Motions to Dismiss. Doc. Nos. [37]; [38]; [39]. The Court dismisses the state law claims against all Defendants, as well as the Section 1983 claim based on a substantive due process violation against Defendants Beiner and FAST. Accordingly, the following claims survive the instant motions to dismiss:

- Section 1983 claims under the Equal Protection Clause against Defendant Higgins, Defendant Beiner, and Defendant FAST, and

- Title IX claim against Defendant FAST.

Now that the Court has ruled on the motions to dismiss, the Parties are expected to conduct the Rule 26(f) Conference, submit their preliminary report and discovery plan, and comply with any other applicable procedures in the Federal and Local Rules.

IT IS SO ORDERED this ____9th____ day of January, 2024.

_____
HONORABLE STEVE C. JONES
UNITED STATES DISTRICT JUDGE

51