Filed

NOV ·9 2006

Professional Standards Comm.

## BEFORE THE PROFESSIONAL STANDARDS COMMISSION
## STATE OF GEORGIA

IN THE MATTER OF:                )
                                 )
   **ROBERT VANDEL**         )   **PSC CASE NO.** 03-1-1528
   Certificate ID # 372120      )
                                 )
                                 )
                                 )

## FINAL DECISION

An Administrative Law Judge of the Office of State Administrative Hearings scheduled a hearing in the above-captioned matter for August 15, 2006. Administrative Law Judge Kristin L. Miller presided over the hearing and prepared the Initial Decision, which was filed in the above matter on September 27, 2006.

On October 12, 2006, the Professional Standards Commission (hereinafter "PSC"), on its own motion, voted to review the Initial Decision and entered an Order for review and scheduling. The educator filed an appeal of the Initial Decision on October 15, 2006.

A review hearing was scheduled before the Professional Standards Commission (hereinafter "PSC") for November 9, 2006. The parties were given notice of the hearing and said hearing was conducted on Thursday, November 9, 2006. As a consequence of the hearing the PSC finds as follows:

## FINDINGS OF FACT

The findings of fact found by the Administrative Law Judge as indicated in the Initial Decision are hereby adopted and incorporated by reference herein.

1



Exhibit 7
Higgins 7.11.2024

FAST 000001

## CONCLUSIONS OF LAW

The Conclusions of Law reached by the Administrative Law Judge as indicated in the Initial Decision are hereby adopted and incorporated by reference herein.

## DECISION

1.

The Commission hereby rejects the modified sanction recommended by the Administrative Law Judge as indicated in the Initial Decision. The Commission concludes that a greater sanction is appropriate in this particular case because the modified sanction recommended by the Administrative Law Judge does not reflect the seriousness with which the Commission views the Respondent's violation of the rules applicable to educators and is not consistent with similar violations.

2.

The Commission hereby **ORDERS** that the Georgia educator certificate held by *Robert Vandel be Suspended for a period of two years to become effective November 24, 2006 and conclude on November 24, 2008.*

3.

If the Respondent decides to appeal this decision, a petition must be filed within 30 days after service of this Final Decision pursuant to O.C.G.A. § 50-13-19.

SO ORDERED this 9th day of November, 2006.

GEORGIA PROFESSIONAL
STANDARDS COMMISSION

DEBORAH WILKES, Ph.D.
Chairperson

FLOYD D. TOTH
Executive Secretary

2

FAST 000002

BEFORE THE OFFICE OF STATE ADMINISTRATIVE HEARINGS
STATE OF GEORGIA

FILED

SEP 2 7 2006

OFFICE OF STATE
ADMINISTRATIVE HEARINGS

ROBERT VANDEL,
　　Petitioner,

v.

PROFESSIONAL STANDARDS
COMMISSION,
　　Respondent.

:
:
:
:
:
:
:
:

DOCKET NO.
OSAH-PSC-SAN-0628182-25-Miller

03-1- 1528

## INITIAL DECISION

### I. Introduction

The hearing in this matter was held on August 15, 2006,[1] pursuant to O.C.G.A. §§ 20-2-984.5(d), 50-13-41, and 50-13-13, before the Office of State Administrative Hearings ("OSAH"), an administrative court. This hearing was held at the request of the Petitioner, for the purpose of determining whether the Petitioner's certificate to teach in the state of Georgia should be sanctioned by the Professional Standards Commission ("Commission"). The Petitioner, Robert Vandel, appeared and was represented by James David Dunham, Esq. Penny L. Hannah, Assistant Attorney General, represented the Commission.

### II. Findings of Fact

1.

The Petitioner holds a certificate to teach in the state of Georgia and held such certificate at all times relevant to the hearing. (Statement of Matters Asserted, ¶ 1; Answer, ¶ 1.)

2.

During the 2002-2003 school year, the Petitioner was employed as a teacher at Midland Middle School in Columbus, Georgia. (Tr. 25, 158; Statement of Matters Asserted, ¶ 2; Petitioner's Responsive Pleading, ¶ 2.)

3.

During the 2003 school year, the Petitioner taught 8th grade science. The Petitioner was an enthusiastic teacher who enjoyed using creative methods to motivate students. For example, the Petitioner rewarded students for answering trivia questions correctly by giving them candy or "dino dollars," which students could accumulate and exchange for various prizes. The

---

[1] The record was closed on September 11, 2006, following receipt of the hearing transcript and the post-hearing submissions of the parties.

Volume _____ Page _____

FAST 000003

Petitioner's students enjoyed his teaching methods and felt that they learned a lot in his classes. At one time, the Petitioner was Teacher of the Year at Midland. (Tr. 38-39, 52, 63, 72, 108, 127-128, 158.)

4.

At times, however, the Petitioner's manner toward certain female students was, at a minimum, overly familiar and inappropriate in the context of a teacher-student relationship. For example:

(a)     The Petitioner rubbed the shoulders of students ▇▇▇▇▇▇ This occurred at various times, including when the students asked the Petitioner questions during class. The Petitioner frequently stood behind the students and massaged their shoulders while he answered their questions. (Tr. 40, 72, 81.)

(b)     On two occasions, the Petitioner touched students ▇▇▇▇▇ on their inner thighs. When these students approached the Petitioner's desk to ask him a question, he positioned himself such that he was straddling their legs and rubbed their inner thighs. As a result, ▇▇▇▇▇ ceased approaching the Petitioner's desk when they had questions. (Tr. 41-45, 53.)

(c)     On one occasion, the Petitioner tapped student ▇▇ on her bottom with a ruler as she was moving into the hallway to perform some measurements during a study of the metric system. (Tr. 72, 77.)

(e)     The Petitioner told ▇▇▇▇▇ that if they would like to receive their Christmas present from him, they should come to his house. The Petitioner stated that his wife would not be at home because he had sent her on a cruise. (Tr. 43, 53-54.)

(f)     The Petitioner frequently referred to student ▇▇ as "Cutie" and told her that if she were older and he were younger, he would date her. The Petitioner also gave ▇▇ his email address and asked her to email him over the winter break so that he could meet with her and give her a Christmas present. (Tr. 87-88; Exhibit R-1.)

Female students felt uncomfortable around the Petitioner as a result of his actions or words as set forth above. (Tr. 45-46, 53-55, 72, 80-82, 87-88.)[4]

---

[2] In order to protect students' privacy, all students will be referred to herein solely by their initials.

[3] ▇▇▇▇ recently changed her last name and is the same student referred to in the Statement of Matters ▇▇▇▇ (Tr. 79.)

[4] The Commission presented evidence of other alleged inappropriate conduct by the Petitioner at the hearing. The Court initially ruled that the evidence was admissible because the Commission had made a general allegation that the Petitioner had "made inappropriate physical contact, comments and e-mail communications with female

FAST 000004

5.

The Petitioner's behavior toward female students also made staff members at the school uncomfortable. ███████████████ who worked in the Petitioner's classroom during the 1999-2000 school year and the 2000-2001 school year, was concerned that the Petitioner's behavior toward female students was overly familiar and inappropriate. For example, ████████████ observed the Petitioner put his arm around the waists of female students and make sexually suggestive comments to them. ████████████ shared her concerns with her supervisor, and asked not to be placed in the Petitioner's classroom again. ████████████ ███████████ who is a teacher at Midland, also had concerns about the Petitioner's familiarity with female students, which she discussed with the Petitioner. ████████████ witnessed an incident in which student ████ approached the Petitioner, grabbed his necktie, put her face close to his, and stated "What are you talking about?" in a joking manner. ████████████ reported this incident to the guidance counselor because she was concerned about the Petitioner's familiarity with the student. (Tr. 14-16, 99-101.)

6.

In January 2003, ██████████████████ reported to ██████████ that the Petitioner had touched them in an inappropriate manner. ████████████ immediately reported the matter to the school principal, ████████ ██████████ spoke with the students and directed an investigation. Following the investigation, the Petitioner resigned his teaching position at Midland. The Petitioner was charged with five counts of the criminal offense of sexual battery. The charges were dead docketed on July 30, 2004. (Tr. 16-19, 25-27, 164-165; Exhibits P-2, P-5.)

7.

At the hearing, the Petitioner explicitly denied touching ████████████ on their inner thighs. With respect to the other incidents recounted by the witnesses, the Petitioner, rather than denying much of his conduct, offered explanations for his behavior. For example, he testified that he "probably" tapped a student on the bottom with a ruler, but that his conduct was not sexual in nature. The Petitioner also admitted that he had given ████ his email address in order to arrange

---

students" and the Petitioner had failed to request a more definite statement of the allegations. (Statement of Matters Asserted, ¶ 3.) However, the Court gave the Petitioner the opportunity to submit further argument following the hearing, to which the Commission filed a response. The Court finds that the Commission failed to provide adequate notice of any allegations that were not specifically set forth in the Statement of Matters Asserted. Under O.C.G.A. § 50-13-13(a)(2)(d), the required notice includes a "short and plain statement of the matters asserted." Further, "If the agency or other party is unable to state the matters in detail at the time, the notice may be limited to a statement of the issues involved. Thereafter, upon application, a more definite and detailed statement shall be furnished." O.C.G.A. § 50-13-13(a)(2)(d). In this case, the Commission did not indicate that it was unable to state certain matters in detail at the time of its initial pleading, and the Statement of Matters Asserted contained a number of specific allegations following the general allegation of "inappropriate physical contact, comments and email communications." This gave the impression that all of the allegations had been stated with specificity, and the Petitioner was not placed on notice that more precise evidence regarding the general allegation would be offered at the hearing. Accordingly, the Court makes no findings regarding any allegations that were not set forth with specificity in the Statement of Matters Asserted, and has not considered any such allegations in rendering this decision.

Volume _____ Page _____

FAST 000005

to give her a box of gourmet jelly beans as a Christmas gift over the school break, and he explained that he did not give her the gift at school because he did not have a gift for all of his students. He stated that he "probably" called ▓▓▓ Cutie" and that he had nicknames for many of his students. He testified that he tried to comfort ▓▓ after her boyfriend had "dumped" her by telling her that she would have no problem finding another boyfriend and that if he were younger, he would take her out. (Tr. 173-179.)

8.

The Court makes the following specific determinations regarding the credibility of the fact witnesses who testified at the hearing, based on their demeanor and attitude during their testimony:

a. The testimony of students ▓▓▓▓▓▓ was credible. These students were articulate and forthright in their testimony. Although the Petitioner argued that they lied because they were upset that he separated them in the class seating arrangement after the winter break, ▓▓▓ did not view this development as significant and ▓▓▓ did not even remember it. In fact, the students suffered consequences significantly more adverse than a change in their seating arrangement after they reported the Petitioner's conduct. ▓▓▓▓▓▓▓ were placed in all new classes, received prank calls, and were subjected to bullying by their peers. (Tr. 46, 48, 56, 58, 82, 161-162.)

b. Student ▓▓▓ testimony was credible. ▓▓▓ was unusually mature and articulate, and her testimony was particularly compelling given her obvious reluctance to become involved. She was in a different science class from ▓▓▓▓▓▓ and she reported the Petitioner's conduct to school officials only after being questioned by her father. (Tr. 75-76.)

c. Student ▓▓▓ testimony was credible. She was also unusually mature and articulate, and no motivation for her to lie was offered at the hearing. ▓▓▓ reported the Petitioner's conduct to her softball coach, who was also a technology teacher, at least a month after ▓▓▓▓▓▓ originally reported their allegations. ▓▓▓ was reluctant to come forward because she had witnessed bullying of ▓▓▓▓▓ She was also in a different science class from ▓▓▓▓▓ (Tr. 82.)

d. Student ▓▓▓ testimony was credible. Her testimony was largely corroborated by the Petitioner, and she was mature, articulate, and thoughtful in her testimony.

e. The Court makes no findings regarding the credibility of student ▓▓ This student was a very reluctant witness, and her testimony lacked detail. Under these circumstances, it was impossible for the Court to assess her credibility.

f. The testimony of ▓▓▓▓▓▓▓ was credible. Both of these witnesses displayed competence and professionalism at the hearing, and no motivation was offered for either of them to lie.

FAST 000006

g. The Petitioner's testimony, to the extent it differed from the testimony of the credible fact witnesses as set forth above, was not credible. He had a clear interest in minimizing his conduct and retaining his teaching certificate, and his testimony was biased accordingly. Further, the Petitioner's purported lack of awareness that his conduct was inappropriate is inconsistent with the testimony of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ reported her concerns regarding the Petitioner's overly familiar behavior toward female students to her supervisor, and ▮▮▮▮▮▮▮ reported her concerns both to the Petitioner and appropriate supervisory personnel. Moreover, even if the Petitioner was not aware of the inappropriateness of his conduct, his lack of perception does not excuse his behavior. (Tr. 14-16, 99-101.)

9.

After resigning his position at Midland, the Petitioner worked as a teacher in Alabama for a year, then moved to Savannah, where he began teaching at Coastal Middle School during the 2005-2006 school year. The Petitioner currently teaches at Coastal Middle School and has introduced stricter discipline in his classroom since he left Midland. ▮▮▮▮▮▮▮▮▮ who is currently retired but hired the Petitioner to teach at Coastal Middle during the 2005-2006 school year, believes the Petitioner to be a good teacher and has commended him for the initiative he has shown as a teacher at Coastal Middle. ▮▮▮▮▮▮▮ had no knowledge of the specific allegations against the Petitioner, but agreed that it was not common for a teacher to ask a student to come to his home to pick up a Christmas gift. (Tr. 151-152, 154, 156, 158-159, 181-182; Exhibit P-1.)

10.

The Petitioner's former students ▮▮▮▮▮▮▮ had positive learning experiences in the Petitioner's class and never observed him act inappropriately toward students. ▮▮▮▮▮▮▮ who is the mother of a former Midland student, and ▮▮▮▮ who is retired teacher for whom the Petitioner did landscaping work, also testified regarding their positive impressions of the Petitioner. (Tr. 107-147.)

11.

The Commission has recommended that the Petitioner's teaching certificate be revoked. (Statement of Matters Asserted, ¶14.)

### III. Conclusions of Law

I.

The Respondent bears the burden of proof in this matter. OSAH Rule 616-1-2-.07(1). The standard of proof is a preponderance of the evidence. OSAH Rule 616-1-2-.21(4).

FAST 000007

2.

The Commission is authorized to sanction an educator who has violated the standards of performance contained in the Code of Ethics for Educators. O.C.G.A. § 20-2-984.1; Commission Rule 505-6-.01. The available sanctions in this case are warning, reprimand, monitoring, suspension, or revocation. O.C.G.A § 20-2-984.5(c).

3.

Standard 1 of the Code of Ethics for Educators[5], entitled "Criminal Acts," provides:

> An educator should abide by federal, state, and local laws and statutes. Unethical conduct includes the commission or conviction of a felony or misdemeanor offense, including DUI/BUI, but excluding minor traffic violations such as speeding, following too closely, improper lane change, etc. As used herein, "conviction includes a finding or verdict of guilt, a plea of guilty, or a plea of nolo contendere.

Commission Rule 505-6-.01(3)(a).

4.

The Petitioner has not been convicted of a crime, and no evidence was presented at the hearing regarding whether or not the Petitioner's conduct constituted a violation of any provision of Georgia's criminal code. Accordingly, the Court finds that the Petitioner did not violate Standard 1 of the Code of Ethics for Educators. See Commission Rule 505-6-.01(3)(a).

5.

Standard 2 of the Code of Ethics for Educators, entitled "Abuse of Students," provides:

> An educator should always maintain a professional relationship with all students, both in and outside the classroom. Unethical conduct includes, but is not limited to:
>
> 1. committing any act of child abuse, including physical and emotional abuse;
> 2. committing any act of cruelty to children or any act of child endangerment;
> 3. committing or soliciting any unlawful sexual act;
> 4. committing any act of sexual harassment; soliciting, encouraging, or consummating a romantic or inappropriate relationship with a student (including dating a student) whether written, verbal, or physical; and

---

[5] The Court has relied upon the version of Code of Ethics for Educators which was in effect during the time of the Petitioner's conduct and which was attached to the Respondent's initial pleading in this matter. (Attachment 3 to OSAH Form 1.)

Volume _____ Page _____

FAST 000008

5.    furnishing alcohol or illegal/unauthorized drugs to any student or allowing a student to consume alcohol or illegal/unauthorized drugs.

Commission Rule 505-6-.01(3)(b).

6.

The Petitioner committed clear violations of Standard 2 by failing to maintain a professional relationship with his students and by repeatedly engaging in sexually harassing behavior through his words and actions, as set forth in detail in the Findings of Fact, above. See Commission Rule 505-6-.01(3)(b).

7.

Standard 10 of the Code of Ethics for Educators, entitled "Professional Conduct," provides:

An educator should demonstrate conduct that follows generally recognized professional standards. Unethical conduct is any conduct that seriously impairs the certificate holder's ability to function professionally in his or her employment position or conduct that is detrimental to the health, welfare, discipline, or morals of students (including inappropriate language, physical altercations, inadequate supervision, inappropriate discipline, etc.).

Commission Rule 505-6-.01(3)(j).

8.

The Petitioner violated Standard 10 by engaging in conduct that seriously impaired his ability to function professionally in his employment position, as set forth in detail in the Findings of Fact, above. In addition, the Petitioner's conduct was detrimental to the health, welfare, discipline and morals of his students. See Commission Rule 505-6-.01(3)(j).

9.

The Commission has recommended the revocation of the Petitioner's teaching certificate. However, the Court finds that the sanction of revocation should be modified because the most serious allegation, that the Petitioner had committed a criminal offense, was not proven.

10.

The hearing held on August 15, 2006, satisfied the requirements of O.C.G.A. §§ 20-2-984.5(d), 50-13-41, and 50-13-13.

Volume _____ Page _____

FAST 000009

## IV. Decision

In accordance with the foregoing Findings of Fact and Conclusions of Law, the Commission's decision to sanction the Petitioner's certificate is **AFFIRMED**. However, the proposed sanction is **MODIFIED** to provide that the Petitioner's teaching certificate shall be **SUSPENDED** for a period of eighteen (18) months.

**SO ORDERED**, this 27th day of September, 2006.

KRISTIN L. MILLER
Administrative Law Judge

Volume _____ Page _____

FAST 000010

**BEFORE THE OFFICE OF STATE ADMINISTRATIVE HEARINGS
STATE OF GEORGIA**

ROBERT VANDEL,
    Educator/Petitioner,

v.

PROFESSIONAL STANDARDS COMMISSION,
    Respondent.

Docket No.: OSAH-PSC-SAN-0628181-25-Miller

Agency Reference No.: 03-01-1528

## NOTICE OF INITIAL DECISION

This is the Initial Decision of the Administrative Law Judge (Judge) in the case. This decision is reviewable by the Referring Agency. If a party disagrees with this decision, the party may file a motion for reconsideration, a motion for rehearing, or a motion to vacate or modify a default order with the OSAH Judge. A party may also seek agency review of this decision.

### FILING A MOTION WITH THE JUDGE AT OSAH

The Motion must be filed in writing within ten (10) days of the entry, i.e., the issuance date, of this decision. This filing of such motion may or may not toll the time for filing an application for agency review. *See* O. C.G.A. §§ 50-13-19 and 50-13-20.1. Motions must include the case docket number, be served simultaneously upon all parties of record, either by personal delivery or first class mail, with proper postage affixed, and be filed with the OSAH clerk at:

Clerk
Office of State Administrative Hearings
Attn.: JENNIFER RISKO
230 Peachtree Street, NW, Suite 850
Atlanta, Georgia 30303-1534

### APPLICATION FOR AGENCY REVIEW

An application for Agency Review must be filed within thirty (30) days after entry of the Initial Decision. O.C.G.A. §§ 50-13-17 and 50-13-41.A copy of the application for agency review must be simultaneously served upon all parties of record and filed with the OSAH clerk. OSAH Rules 616-1-2-.22 and .23. The application for Agency Review should be filed with:

Georgia Professional Standards Commission
Educator Ethics Division
2 Peachtree Street, N.E.
Suite 6000
Atlanta, Georgia 30303
Attn: Lisa Hartzler

This Initial Decision will become the Final Decision of the agency if neither party makes a timely application for agency review. O.C.G.A. §§ 50-13-17 and 50-13-41. In certain cases, an Initial Decision may become Final and therefore not subject to review either by agency provision or the provisions of O.C.G.A. § 50-13-17(c). When a decision becomes Final, an application for judicial review must be filed within thirty (30) days in the Superior Court of Fulton County or the county of residence of the appealing party. If the appealing party is a corporation, the action may be brought in the Superior Court of Fulton County or the superior court of the county where the party maintains its principal place of doing business in this state. O.C.G. A. § 50-13-19(b).

FAST 000011

**PC 23 - 1**

## CASE SUMMARY

**Investigator:**          Ron Fuller

**Case Number:**           03-01-1528

**Ethics Violation:**      Abuse of Students
                          Criminal Acts
                          Professional Conduct

**Certificate Holder:**

| Certificate Field: | Middle Grades (4-8) |
| | Elementary Grades (P-8) |
| | Early Childhood Education (P-5) |
| Validity Date: | June 30, 2006 |

**Initial Applicant:**

| Application Date |
| --- |

**Position Held:**         Teacher

**Employment Status:**

| Fired: | Resigned: X - in lieu of termination |
| --- | --- |
| Presently in Educational Setting: | |

**Complaint Origin:**

| School System: | X |
| --- | --- |
| Parent: | |
| Student: | |
| Colleague: | |
| Other: | |

**PSC Actions:**

| |
| --- |

**Criminal History:**

| Violation: Sexual Battery, 4 Counts | |
| --- | --- |
| Date: | January 30, 2003 |
| Disposition: | Pending |

| Violation: Simple Battery, 1 Count | |
| --- | --- |
| Date: | January 30, 2003 |
| Disposition: | Pending |

| Violation: | |
| --- | --- |
| Date: | |
| Disposition: | |

## INVESTIGATIVE SUMMARY

<div style="float:right; border:1px solid black;">**PC 23 - 2**</div>

**Case Number:**                        03-01-1528

**Synopsis:**
The Assistant Superintendent for Personnel of the school system alleges that the educator inappropriately touched and made inappropriate comments to students at the middle school. It is also alleged that the educator engaged in inappropriate e-mail communications with students.

During the preliminary investigation, it was determined that on January 30, 2003, the educator was arrested and charged with Four Counts of Sexual Battery and One Count of Simple Battery. The alleged victims are the educator's students.

The attorney for the educator states that the educator is not in a position to provide any information as it relates to this investigation because the criminal charges against his client have yet to be resolved. He requests that the Commission enter an order extending the review period until the criminal charges have been fully resolved.

**Investigative Findings:**
Teacher #1, an eighth grade teacher reported the following:
- On January 16, 2003, Students #1, #2 and #3 came to her room and stated they wanted to talk to her.
- She does not recall who spoke first, but each of them informed her that the educator was touching them and making comments that made them uncomfortable.
- All three students were tearful and "emotionally distressed."
- None of the students wanted to get the educator in trouble; they just wanted him to stop.
- She called the office and asked the principal of the school to come to her classroom.
- The students told the principal what they had told her about the educator.
- The principal asked each student to write a statement.

The principal of the school reported the following:
- He was called to the room of Teacher #1 on January 16, 2003, where he met with Students #1, #2 and #3.
- They disclosed to him that the educator had touched them and that he made comments to them and others that made them uncomfortable.
- He asked each student to write a statement.
- He contacted other school administrators to advise them of the allegations and contacted the parents of each student.
- "All of the parents made it a point to tell me that their children liked Mr. ____ (Educator) and did not want to see him terminated."
- He met with the educator, advised him of the allegations and asked him to provide a written statement. (In case file)

**PC 23 - 3**

- On January 21, 2003, he met with Student #5 and her father. Student #5 provided a statement, stating that the educator had hit her on her bottom with a ruler. She also stated that Student #4 had told her that she felt uncomfortable in the educator's class. (Statements in file)
- He met with the Director of Guidance, who stated that she had counseled two students in the educator's class last year.
- The two students came to her, wanting, "strategies to deal with being singled out and bragged on for being his class favorites."
- The Director did not see the situation as being anything more than a counseling session and did not report it.
- The educator attended several grade level and management team meetings during the 2002 school year. The subject matter covered in these meetings included sexual harassment policies, showing favoritism to students, inappropriate physical contact and verbal comments made to or in the presence and students or staff. (Copy of meeting dates in case file).

Student #1, #2 and #3 provided statements and were interviewed by the Assistant Superintendent for Personnel. They reported the following:

**Student #1**
- "When he (Educator) talks to me he puts he hand on my behind."
- The educator, while sitting at his computer desk, touched her on her inner and outer thigh at different times. She was not sure if anyone witnessed it happening. (Student demonstrated how it occurred)
- She and Student #2 called the educator at his home after finding his number in the phone book.
- The educator stated once that he was disappointed in her because she and her friend did not call him over the weekend. He said that, "If my best friend and I wanted our Christmas presents that we had to call him and come over to his house."

**Student #2**
- "When he talks to me he puts his hand on my behind and makes me mad."
- The educator has put his hand on her inner thigh and rubbed it up and down.(Student demonstrated how it occurred)
- The educator threw a candy bar down her shirt and said, "I know that went straight through."

**Student #3**
- She and Student #12 went to the educator's room to talk with him about an assignment.
- Student #12 stood beside him next to his computer desk. She observed the educator putting his hand on her buttocks, rubbing his hand up and down as he spoke to her.
- The educator then turned to her, placed his hand on her buttocks and asked how she was doing. (Student demonstrated how it occurred)

**Student #4**
- The educator has touched her "butt" on one occasion.
- "When he ask questions he comes over to me and rubs my shoulder, which makes me uncomfortable."

PC 23 - 4

**Student #5**
- "Before Christmas Mr. _____ (Educator) came by and hit me on the bottom with a ruler and my friend _____ (Student #4) and (sic) the week we came back from Christmas break he smacked me on the bottom with the ruler again."

Note: The educator was charged with four counts of Sexual Battery regarding the incidents reported by Students' #1 through #4. He was also charged with on count of Simple Battery as it relates to the incident reported by Student #5. The Police Sergeant and the Department of Human Resources Investigator jointly interviewed Students #1 through #5. The Police Sergeant stated that all the students corroborated what was disclosed in their statements and previous interviews. The Assistant Solicitor General has the original interview tapes and will make copies available upon request.

**Student #6** in her statement reports:
- In October, 2002, the educator had asked her if she wanted a "gummy bear." She stated that she did. "When he pulled them out of the bag they were stuck together he said (sic) "Well, you can't have those because they are doing something nasty, no seriously look, they're even doing it upside down."
- She stated that the educator has grabbed her thigh and has grabbed her around the waist.
- She has heard him make other inappropriate comments to other students in the classroom.
- He winks at her and stares at her for long periods of time.

The ▆▆▆▆▆▆ Teacher reported:
- Student #6 came to him and told him about the "gummy bears"; the inappropriate touching and the inappropriate comments made to other students.

The ▆▆▆▆▆ reported:
- She worked in the educator's classroom when he taught in the 6th and 8th grades.
- He would allow certain female students to hang out behind his desk while other students did class work.
- Some of the same girls had free access to his desk drawer where they helped themselves to candy or cookies.
- He would put his arm around the female students' waist while he talked to them.
- The educator would make sexually suggestive comments in class to the students.
- "At times it was not the words in themselves that was suggestive but the tone in which it was spoken."
- "If things in the room were stuck together, whether it be papers, candy, chairs, whatever, it was the opportunity for him to comment that the items were doing the 'Nasty' (his word)."

**Student #7**, in a statement prepared by her parent reported the following:
- Her daughter was one of the educator's favorite students in the 6th, 7th and 8th grades.
- Her daughter was always rewarded with special favors and candy. The educator made it obvious to the other students that she was his "teacher's pet."
- Her daughter told her that the educator had given her grades she did not earn. When she missed a test, he would just give her an "A."

FAST 000015

- He would e-mail her daughter at home, telling her he missed her and asking her about her personal life.
- The educator never said anything inappropriate to her daughter but continuously kept in contact with her.

## Student #11
- The educator called her "cutie" everyday in class.
- He said that she was cute and if he were 50 years younger he would go out with her.
- The day before Christmas break, the educator provided her his e-mail address. He told her to contact him and tell him where she would be so he could give her a Christmas present.

The ████████████ reported the following:
- She overheard the educator ask a student to come to his house to pick up a present he had for her.
- When the educator wanted to speak with her, he would rub her back or massage her shoulders. She would pull away from him and would avoid him.
- "I believe Mr.____ (educator) has a problem knowing what is appropriate and what is not appropriate when communicating with females in general. He comes across as a friendly man to work with and an enthusiastic teacher, but then he crosses the line to the point of making you feel uncomfortable and not wanting to trust his intentions."

**Students #8, #9 and #10** provided statements, supporting the educator, stating that he would not do anything wrong. They did not witness what the other students said happened. (Copies of statements in file).

In a statement dated January 16, 2003, and in an interview on January 17, 2003, the educator reported the following:
- He has never made inappropriate physical contact with any student. He has never made any inappropriate comments to any student.
- He stated that the students may have said things for several reasons:
  - He was not a strict teacher and had been very relaxed with his students.
  - He is a friendly "touchy feely" person.
  - He had disciplined a couple of the students, and they may be angry with him.
- Since he has no teacher's desk, he will sit at his computer to grade papers or post grades.
- He will have students come up to him to discuss assignments or grades.
- "I will occasionally make contact with them as we examine their progress on the computer and discuss their grade. This is an important part of the learning process because I believe students need to have that one-on-one conversation with teachers. In no way is that contact meant to mean anything else."
- Many students have his e-mail address. It is for students or parents to contact him on school business and nothing else.
- He gives out candy as part of his instructional process.
- He did remember throwing out candy in class when students answered a question correctly. One student missed the candy, and it went down her shirt.
- He told the student (Student #2) to stand up and it would fall out.

PC 23 - 6

- He did not make this comment to embarrass the student.
- He apologized if any of his actions or comments were misconstrued.
- He admitted to buying a student (Student #11) a box of candy for a Christmas present and gave her his e-mail address so he could arrange to get it to her.
- He did this because she is his favorite student.
- The student never contacted him, so he kept the candy and ate it himself.

Note: The educator was interviewed by the Principal, Personnel Assistant and the Assistant Superintendent for Personnel. The statement was made at the request of the Principal of the middle school. The statement and interview were recorded before the educator was arrested and obtained counsel.

All evidence referred to in this summary is incorporated into the case file.

FAST 000017



Filed

FEB 14 2019

Professional Standards Comm.
Educator Ethics

BEFORE THE GEORGIA PROFESSIONAL STANDARDS COMMISSION
STATE OF GEORGIA

IN THE MATTER OF:

Robert Allen Vandel,                    PSC No. 17-6-1614
Certificate No. 372120
Respondent.

## CONSENT ORDER

By agreement of the Georgia Professional Standards Commission and Robert Allen Vandel, Respondent, the following disposition of this matter is entered pursuant to the provisions of the Georgia Administrative Procedure Act, codified as O.C.G.A. § 50-13-13(a)(4).

## FINDINGS OF FACT

1.

Respondent holds a certificate to teach in the State of Georgia and held said certificate at all times relevant to the matters asserted herein.

2.

Respondent reportedly smelled of alcohol on school grounds during the evening. Respondent admitted to having two glasses of wine at dinner before returning to school. Respondent stated that he was asked at the last minute to report to school to answer questions at a parent information session of middle school parents where middle and elementary school parents were invited to attend. Since no middle school parents showed up, he stayed in his room and had no interaction with parents or students during the session. Respondent was cleared by the principal to drive home.

## CONCLUSIONS OF LAW

Under Chapter 2 of Title 20 of the Official Code of Georgia Annotated, the Georgia Professional Standards Commission has authority to take action against Respondent's certificate. The parties agree to waive any further conclusions of law.

## ORDER

The Georgia Professional Standards Commission, having considered the particular facts and circumstances of this case, hereby Orders, and Respondent hereby agrees, to the following terms:

1.

Respondent's certificate as an educator in the State of Georgia shall be suspended retroactively for ten (10) days, May 17, 2017 through May 31, 2017. During the period of suspension, the Respondent shall not be employed as an educator, paraprofessional, aide, substitute teacher, or in any other position in a public school in the State of Georgia. During the period of suspension, the Respondent shall take any courses necessary and pay any fees necessary to maintain certification such as renewing the certificate. A violation of this Paragraph shall be grounds for revocation of the certificate to teach.

FAST 000018

2.

Approval of this Consent Order by the Commission shall in no way be construed as condoning the Respondent's conduct and shall not be construed as a waiver of any of the lawful rights possessed by the Commission.

3.

This Consent Order shall not become effective unless and until approved by the Commission.

4.

The Respondent must always answer affirmatively to the question on Commission applications regarding receiving a sanction.

5.

Respondent acknowledges that he has read this Consent Order, and understands the terms and sanctions described herein. Respondent understands that there is a right to a hearing on this matter, and he waives such right by freely, voluntarily, and knowingly entering into this Consent Order. Respondent understands and agrees that the Commission shall have the authority to review the investigative file and all relevant evidence in considering this Consent Order. Respondent further understands that this Consent Order, once approved, shall constitute a public record that may be disseminated as a disciplinary action of the Commission. If this Consent Order is not approved, it shall not constitute an admission against interest in this proceeding, or prejudice the ability of the Commission to adjudicate this matter. Respondent hereby consents to the terms and sanctions contained herein.

This _19_ day of _November_, 2018.

CONSENTED TO:

_____

Robert Allen Vandel
Respondent

Sworn to and subscribed
before me this _19th_ day
of _November_, 2018.

_____
NOTARY PUBLIC

[Notary seal: ALEXIS TAYLOR, NOTARY PUBLIC, COBB COUNTY, GEORGIA, MY COMMISSION EXPIRES MAY 18, 2021]

- 2 -

FAST 000019

Approved by the Commission this _14th_ day of _February_, 2018.

GEORGIA PROFESSIONAL
STANDARDS COMMISSION

BY:

KAMILA B. LUIGS
Chair

ATTEST:

Paul A. Shaw, Director
Educator Ethics Division

- 3 -

FAST 000020

# Probable Cause Case

**17-6-1614**

| | |
|---|---|
| **Case Number:** | PCE 17-6-1614 |
| **Investigator:** | Franklin |
| **Position Held:** | Teacher |
| **Employment Status:** | Terminated |
| **Complaint Origin:** | State Charter school |

**Complaint:** At an evening Parent Information Session, several staff members reported the educator smelled of alcohol, was slurring his speech and "swaying" while walking. The school Principal approached the educator and the educator admitted he had had wine with his dinner before returning to the school. The Principal walked the educator to his car and told him to be careful. The educator was placed on unpaid administrative leave and resigned from the school district.

**Findings of Fact:** The educator admitted that he had two glasses of wine between the end of the school day and when he returned to the school for a Parent Information Session. School personnel smelled alcohol on the educator and believed that his behavior was atypical - he was standing too close when talking, he was unsteady, and his words were slurred. He was questioned by the principal as he left the session and allowed to drive home. There were no tests to determine blood alcohol levels.

**Standard, Rules or Laws in Complaint:**
**PSC Rule 505-6-.01 (3c)** - The educator was on school premises or at a school-related activity while under the influence of, possessing, or consuming alcohol during the course of professional practice.
**PSC Rule 505-6-.01 (3j)** - The educator failed to demonstrate conduct that follows generally recognized professional standards and preserves the dignity and integrity of the teaching profession by demonstrating conduct that impairs and/or diminishes the certificate holder's ability to function professionally in his or her employment position, or behavior or conduct that is detrimental to the health, welfare, discipline, or morals of students;

**Investigative Findings:**
- The educator was a middle school science teacher at a State charter school. On or around 5/4/17, the school was holding an information meeting for prospective families. It was held in the early evening a few hours after the school day ended.
- A teacher and the enrollment manager approached the principal to say that they smelled alcohol on the educator. The enrollment manager made a written statement for the school. She said, "On May 4th 2017 during our last open enrollment session, I interacted with Mr. ___ (educator) prior to the session starting. When he spoke to me I could smell alcohol on his breath. I the noticed that he was swaying a little bit and acting different. It wasn't until I went back to gather records, when I interacted with him again and realized that he was possibly intoxicated. I notified my principal of this issue…"
- The teacher's written statement said, "I was at the school Thursday, 5/4, in the evening for the Parent Information Session. I spoke with Mr. ___ (educator) briefly in the hallway. I could tell he had been drinking due to his behavior not being typical. He swayed a little bit and was talking very close to people. I could smell what I thought to be alcohol but was not standing as close as other individuals.
- The principal, who has since resigned, wrote that, "…I was informed by several staff members

## Probable Cause Case

**17-6-1614**

that ___ (educator) ... smelled of alcohol. The administration was conducting an enrollment information meeting...Mr. (educator) was at school to represent the middle school and be able to answer inquiries from parents. After being informed of his condition, I approached him in the hallway as he was about to leave. We stepped outside so no one could hear our conversation. I asked him what he did after school and before he returned to school. He replied that he had gone home and made dinner. I asked him what he had to drink. The expression on his face changed to one of concern. He replied he had had a couple of glasses of wine. I told him that I thought I had smelled alcohol when I passed him going into the room where we were holding the meeting. He had not come in the room and stayed in the hallway with the other teachers who were going to lead the tours. When the tour began, he went up to his room. Several of the teachers who were in the hall way (sic) came up to me and said his words were slurry and that he smelled of alcohol. After he answered my last question I walked with him part way to his car and told him to be careful. I then returned to our enrollment session..."

- The former assistant principal (AP), now principal told this investigator that they was no blood alcohol test done. The principal had asked the educator if he was okay to drive. When he said "yes", the principal let him leave. His behavior was not so pronounced as to cause concern for his ability to drive.
- The two employees who made statements told this investigator that they had suspected that the educator smelled of alcohol at least once before. They were not sure enough to report him to administrators.
- The educator's written statement for the school is essentially the same as the statement made to this investigator.
- The educator telephoned in response to his Notice of Investigation letter. He said that he did not know until the last minute that he would be attending the information session. His dinner plans were already in place. They were having Italian that night, and when they ate Italian, he had wine. He admitted that he had drunk two glasses of wine and had eaten little since he had return to school. He was quite sure that his speech would not be slurred by two glasses of wine.
- No middle school parents showed up for the information session, only elementary school parents. Therefore, no parents came to his classroom. He had no interactions with parents or students during the course of the session.
- He questioned why, if he was intoxicated as alleged, he was allowed to stay at school and allowed to drive home. He believes that he is being railroaded.

### Evidence in the Case File supporting the Findings of Fact:
1. Complaint
2. Recordings